ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff v. BRUCE THOMPSON, Defendant Third-Party Plaintiff and Respondent, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Corporation, Third-Party Defendant and Appellant.

No. 11313.
Submitted September 15, 1967. Decided October 27, 1967.
Rehearing denied December 6, 1967.
433 P.2d 795.

William A. Brolin (argued), Anaconda, Lyman H. Bennett, Jr. (argued), Bozeman, for appellant.

Donald A. Nash (argued), Morrow & Nash, Berg, O'Connell & Angel, Charles F. Angel (argued), Edmund P. Sedivy (argued), Bozeman, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment entered on a motion for summary judgment in favor of third party plaintiff Thompson for the amount of $2,500 attorney fees and other costs, the judgment running against the third party defendant.

St. Paul Fire & Marine Insurance Company brought an action against Bruce Thompson. Thompson in turn filed a third-party complaint against State Farm Mutual Automobile

Insurance Company. The parties will be hereinafter called, for brevity, St. Paul, Thompson, and State Farm.

St. Paul insured Haggerty-Messmer Company and sues as subrogee. Haggerty-Messmer Company was the employer of Thompson. One Welch, in 1963, recovered judgment in the amount of $61,500 against Haggerty-Messmer Company and Thompson as joint tort-feasors in an action arising out of an automobile accident. Thompson, the employee, negligently drove his own automobile while acting in the course and scope of his employment by his employer; and thus, Haggerty-Messmer Company was the subject of the joint judgment against itself and Thompson. (See our Opinion affirming the judgment in Welch v. Thompson, 145 Mont. 69, 399 P.2d 748.) The instant suit by St. Paul as subrogee, is on what we will term a theory of indemnity against Thompson; that is, a suit seeking indemnity by a joint debtor, the employer who was found liable by reason of the doctrine of respondeat superior.

Thompson had an insurance policy covering his own liability with State Farm. State Farm actively defended Thompson in the Welch case referred to above.

St. Paul paid $57,240.61 on the Welch judgment. State Farm paid $11,204.64 on the same judgment. State Farm's policy limits were, generally speaking, $10,000 for bodily injury and $5,000 for property. The judgment was for bodily injury.

After Thompson was sued in the instant case, he notified State Farm and requested State Farm to defend him in said action. State Farm did commence to defend Thompson by a motion to dismiss, which motion was subsequently overruled. Shortly thereafter the insurer, State Farm, advised the insured, Thompson, that it would not further defend him. As a result, Thompson filed a third party complaint against the insurer seeking damages for the insurer's breach of contract to defend the suit.

The relevant portion of the contract read:

"(1) To pay all damages which the insured shall become

legally obligated to pay because of (A) bodily injuries sustained by other persons, and (B) injury to or destruction of property of others, caused by accident arising out of the ownership, maintenance or use, including loading or unloading of the owned automobile.

*"Limits of Liability—Coverages (A) and (B)* unless specifically amended in the declarations, the company's limit of liability shall not exceed under coverage (A) $10,000 for all damages arising out of bodily injuries sustained by one person in any one accident and subject to this provision $20,000 for two or more persons in any one occurrence; coverage (B), $5,000 for all damages to all property of one or more persons or organizations in any one occurrence.

"The inclusion herein of more than one insured shall not increase the limits of liability.

"*(2) As respects the insurance afforded under coverages (A) and (B) and in addition to the applicable limits of liability;*

"(a) To defend any suit against the insured alleging such bodily injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"(b) To pay costs taxed against the insured in any such suit and, after entry of judgment, all interest accruing on the entire amount thereof until the company has paid or tendered such part of such judgment as does not exceed the limit of the company's liability thereon * * *." (Emphasis supplied.)

As far as this appeal is concerned, the judgment was rendered on a motion for summary judgment entered in favor of Thompson for $2,500 attorney fees for defense of the suit and for other costs.

The issue presented is whether, under the terms of the insurance policy, State Farm had a duty to defend this action for indemnity between joint tort-feasors, one of whom was its insured under the quoted contract above.

An aside as to the issue is that appellant's brief set up numerous issues which involved St. Paul as well as Thompson. On oral argument and in a supplemental brief, the issues mentioned were abandoned, leaving Thompson as the sole respondent.

Now then, we observe as did appellant's brief, the exact issue could have been brought to issue in the first trial as Haggerty-Messmer Company was a party to that action and did nothing then about attempting to assert a cross-claim as against Bruce Thompson, although that right was available. (See M.R.Civ.P., Rule 13(g).) Of course, again as an observation, Haggerty-Messmer's position in the first trial was that Thompson was not in the course of employment at the time of the accident. Thus, to have asserted the claim of indemnity would have been somewhat inconsistent at that time. Now, however, since the judgment then was against both Thompson and Haggerty-Messmer, the subrogee seeks indemnity.

Appellant State Farm's position is that the policy imposes no duty to defend this suit of *indemnity* because its only duty was, "to defend any suit against the insured alleging such *bodily injury* or destruction and seeking damages * * *."

The respondent Thompson's position is since the continuing language of sub-para. (a) partially quoted immediately above is *"any suit * * * on account thereof, even if such suit is ground-less, false or fraudulent"*; that such language should be inter-preted to mean that this action by St. Paul against Thompson is merely a continuation of the original action by Welch in which the insurer defended the insured. To support this, the respondent looks also to the language in paragraph 1, "arising out of bodily injury"; and in addition paragraph 2 as herein-before underlined.

The district court found the respondent's position correct, and we affirm.

We have found no case specifically interpreting the contract language here. Our statute, R.C.M.1947, § 13-270, has been

interpreted to mean, among other things that, "in case of uncertainty, every doubt should be resolved in favor of the insured and the policy should be construed strictly against the insurer." (Niewochner v. Western Life Insurance Co. (Mont. 1967) 422 P.2d 644.)

In Eby v. Foremost Insurance Co., 141 Mont. 62, 66, 374 P 2d 857, this court quoted Prickett v. Hawkeye-Security Ins. Co., 10 Cir., 282 F.2d 294, 301, 83 A.L.R. 2d 1224, in stating the Kanses rule in part as follows:

■ " 'But if the terms of the policy are ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail.' " (And see Johnson v. Equitable Fire & Marine Ins. Co., 142 Mont. 128, 131, 381 P.2d 778.)

■ We hold that the language of the contract is uncertain in this regard. We think the recognition previously mentioned that the indemnification matter might have been litigated in the Welch trial under Rule 13(g), at a time when the duty to defend was clear, is sufficient to support this finding. Again, looking to the Kansas rule which we have adopted, we find that, "the test is not what the insurer intended the words of the policy to mean but what a reasonable person in the position of an insured would understand them to mean."

■ A reasonable person in the position of Thompson would understand that his insurance carrier, State Farm had a duty to defend him in "any suit * * * on account thereof, even if such suit is groundless, false or fraudulent."

Appellant State Farm goes even further, though in asserting that it had paid the policy limits. State Farm cites Commercial Union Insurance Company of New York v. Adams (D.C.Ind. 1964), 231 F.Supp. 860; Lumbermen's Mutual Casualty Company v. McCarthy, 90 N.H. 320, 8 A.2d 750, 126 A.L.R. 894; Denham v. LaSalle-Madison Hotel Co., (C.C.A. 7th Cir. 1948), 168 F.2d 576; Mead Corporation v. Liberty Mutual Ins. Co.,

107 Ga.App. 167, 129 S.E.2d 162; and General Casualty Co. of Wisconsin v. Whipple (C.C.A. 7th Cir. 1964), 328 F.2d 353.

█ First of all, the payment of policy limits is clearly distinct and separate from the duty to defend. The policy provides that. Interestingly, the Mead Corporation v. Liberty Mutual case, supra, holds the same. In that case the rule of the Lumbermen's Mutual Casualty Co. v. McCarthy case, supra, was expressly rejected and in the Mead case it was stated:

" 'The principle that "the duty to defend is broader than the duty to pay" is now beyond cavil.' The agreement to defend is not a covenant subordinate to or dependent on the agreement to indemnify; it is distinct from, different from, independent of, and broader than the insurer's promise to pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury. There is no language in the policy making the defense covenant dependent on the amount of liability for bodily injury. The defense covenant is clear, positive, and unambiguous, and should be accorded its plain and ordinary meaning." Comunale v. Traders & Gen. Ins. Co., 321 P.2d 768, 773 (Cal.App.).

█ Under the facts of the instant case, State Farm's duty to defend continued even though it had paid the policy limits.

We have not attempted to distinguish the other cases cited by State Farm, that is, Commercial Union Insurance Company of New York v. Adams, supra; Denham v. La Salle-Madison Hotel Co., supra, nor General Casualty Co. of Wisconsin v. Whipple, supra. However, those cases do not impress us as the correct law in the area.

We find then that the obligation to defend does exist. But, State Farm argues that it should be allowed to defend rather than paying counsel to defend the action. There can be no question of the good faith and sincere defense by counsel for State Farm in the Welch suit nor here. However, the inconsistent and yes, antagonistic positions that have developed

make it clear that Thompson was required to hire his own counsel. No issue as to the amount of damages is involved.

█ But one more matter needs discussion. Subsequent to the oral argument and predicated upon the fact that State Farm, as appellant, abandoned several of the issues on appeal, leaving in effect Thompson as the sole respondent, St. Paul has filed a motion for damages for appeal without merit. We believe our discussion previously indicates that St. Paul might have litigated the issue of idemnity in the previous action, but chose not to because of an inconsistent position. Even though St. Paul now has the favorable position of being "let-out" on issues on appeal, nonetheless it is very much a part of the issue. We have no doubt, for that matter, that it likely would have appeared as amicus curiae. Additionally, we have observed previously that the parties were and are in good faith, we hold that assessment of damages for appeal without merit are not proper. It is so ordered.

By what has been heretofore stated, the judgment appealed from is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR and JOHN HARRISON concur.

MR. JUSTICE HASWELL (specially concurring in part and dissenting in part):

I concur in the result reached by the majority finding a breach of duty to defend by State Farm and awarding Thompson the sum of $2,500 by reason thereof. I do not agree however, that the duty to defend arises from ambiguous policy provisions construed in favor of the insured, Thompson. In my opinion the policy provisions relating to the duty to defend are clear, definite, unambiguous, and impose no duty on State Farm to defend in the instant situation under any recognized principles of construction. Under the terms of the policy, State Farm has the duty "to defend any suit against the insured *alleging such bodily injury or destruction and seeking*

*damages on account thereof,* even if such suit is groundless, false or fraudulent." (Emphasis supplied.)

The instant action by St. Paul against Thompson does not allege bodily injury or destruction of property and seek damages on account thereof. On the contrary it is an action by one of two joint judgment debtors against the other to recover all sums paid by the one debtor on the judgment secured against both. It is based on the principle of indemnity and is in no sense an action seeking damages for bodily injury or destruction of property. In my view, to hold that the language of the policy requires State Farm to defend here is to strain the meaning of the English language.

I would base the result reached here on the principle of estoppel. In the action resulting in the joint judgment, State Farm had control of Thompson's defense under standard policy provisions. For tactical reasons, State Farm chose not to litigate the respective rights and liabilities existing between the two defendants (who later became the two judgment debtors), but instead elected to confine that action to the question of liability as between the plaintiff therein on the one hand, and the two defendants jointly on the other. The effect of this choice was twofold: (1) To remove the duty to defend from the ambit of the policy provisions, and (2) To necessitate the instant action to determine rights as between the two joint judgment debtors. As the rights involved in the instant case could have been litigated in the original suit and if so litigated then, there would have been a clear duty on the part of State Farm to represent and defend Thompson therein, I would estop State Farm from denying the duty to defend Thompson in the instant case. In my view, sound public policy requires this approach.

I dissent from that part of the majority opinion refusing recovery of damages to St. Paul from State Farm based on an unmeritorious appeal. The only reason that St. Paul is involved in this appeal at all is because State Farm appealed

from the trial judge's denial of summary judgment in favor of Thompson against St. Paul. A denial of a motion for summary judgment is not an appealable order. (Rule 1, M.R.App.Civ.P.; Barron and Holtzoff, Federal Practice and Procedure, Vol. 3, § 1242; Moore's Federal Practice, Vol. 6, § 56.21[2]; Jones v. St. Paul Fire and Marine Ins. Co., 5 Cir., 108 F.2d 123; John Hancock Mutual Life Ins. Co. v. Kraft, 2 Cir., 200 F.2d 952; Dutton v. Cities Service Defense Corp., 8 Cir., 197 F.2d 458; McGarth v. Hunt, 2 Cir., 194 F.2d 529; Atlantic Co. v. Citizens Ice & Cold Storage Co., 5 Cir., 178 F.2d 453; Marcus Breier Sons v. Marvlo Fabrics, Inc., 2 Cir., 173 F.2d 29.) The reason it is not appealable is that a denial of summary judgment is an interlocutory order, leaving the case pending for trial, and no party's rights are finally foreclosed. To my mind, this appeal insofar as St. Paul is concerned, is clearly without merit and obviously for the purpose of delaying St. Paul's indemnity action against Thompson. It is true that upon oral argument, State Farm abandoned its appeal from the trial court's denial of a motion for summary judgment in favor of Thompson against St. Paul, but by that time the damage was done; St. Paul had prepared its brief on appeal; St. Paul's attorneys were before the court for the purpose of oral argument; and St. Paul's attorneys proceeded with oral argument and supplemental briefs in much the same fashion as on any appeal.

For the foregoing reasons I would award damages for an appeal without merit and for the purpose of delay in favor of St. Paul and against State Farm to the extent of a reasonable attorney's fee for St. Paul's attorneys on this appeal pursuant to Rule 32, M.R.App.Civ.P.